2021 IL App (1st) 200486-U

SIXTH DIVISION
February 19, 2021

No. 1-20-0486

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LIBRARY TOWER CONDOMINIUM ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17 L 5988 |
| LIBRARY TOWER, LLC, and LENNAR CHICAGO, INC., successor by merger to CONCORD HOMES, INC., | ) ) ) ) | Honorable Daniel J. Kubasiak, Judge Presiding. |
| Defendants | ) ) | |
| (Library Tower, LLC-Appellee). | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court did not err when it granted defendant's motion to dismiss plaintiff's claims because the purchase agreement contained waivers of implied warranties; affirmed.

¶ 2    Plaintiff, Library Tower Condominium Association (plaintiff or Association), appeals

from the circuit court's order that granted defendant, Library Tower, LLC's motion to dismiss

the breach of implied warranties of habitability and good workmanship claims contained in

plaintiff's complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS

5/2-619 (West 2018)). On appeal, plaintiff contends that the circuit court erred when it granted defendant's motion to dismiss based on waivers of the implied warranties of habitability and good workmanship contained in the purchase agreement and the Association's Declaration. Plaintiff argues that the disclaimer of the implied warranties in the purchase agreement was invalid and unconscionable and defendant failed to establish that each unit purchaser signed the agreement and agreed to the disclaimer. Plaintiff contends that the Association's Declaration only referenced the disclaimer contained in the purchase agreement, and the unit purchasers received no consideration in exchange for the disclaimer. For the following reasons, we affirm.

¶ 3                                              I. BACKGROUND

¶ 4        This action arises out of a condominium construction and development project located at 520 South State Street, in Chicago, which is a high rise building with 184 units. Plaintiff is the condominium association of the development. Defendant was the developer and seller of the individual units and performed construction operations on the building. Lennar Chicago, Inc., successor by merger to Concord Homes, Inc., was the general contractor on the project and is not a party to this appeal. Plaintiff filed claims against defendant and Lennar for breach of implied warranty of habitability and breach of implied warranty of good workmanship.

¶ 5        This is the second time this case has been on appeal. In the first appeal, defendant challenged the circuit court's order that denied its motion to compel arbitration. *Library Tower Condominium Association v. Library Tower, LLC*, 2019 IL App (1st) 181035-U, ¶¶ 24, 48. In our previous decision, we dismissed the appeal for lack of jurisdiction because defendant did not file an interlocutory notice of appeal within 30 days of the circuit court's interlocutory order denying defendant's motion to compel arbitration. *Id.* ¶ 48.

¶ 6　　　　On remand, the circuit court granted defendant's motion to dismiss plaintiff's claims based on waivers of implied warranty of habitability and good workmanship contained in the purchase agreement and the Association's Declaration. Our previous decision set forth the facts leading up to the first appeal. The following is a limited recitation of those facts as well as additional facts necessary for an understanding of the case for this appeal.

¶ 7　　　　In June 2017, plaintiff filed a three-count complaint against defendant and Lennar, which was the successor by merger to Concord Homes, Inc., and the general contractor on the project. Plaintiff alleged as follows. Plaintiff was an Illinois condominium association and an apartment-style development of 184 units in a high rise building at 520 South State Street, in downtown Chicago. Defendant was the developer and seller of the condominium units for the development and performed construction operations on the building for the Association. The Association was established by a document entitled Declaration of Condominium Ownership for Library Tower Condominium and Provisions relating to Certain Non-Condominium Property (Declaration). On May 8, 2018, the Declaration was recorded with the Cook County Recorder of Deeds. On August 18, 2010, defendant turned control of the Association to a Board of Directors elected from the unit owner membership.

¶ 8　　　　Plaintiff alleged that in September 2015, it discovered numerous masonry construction defects at the building, including the following:

> "flashing does not extend beyond the perimeter of the wall, which allows water to
> remain behind the façade and causes the exterior bricks to spall, deteriorate, and fall off
> the [b]uilding; flashing is missing in other locations on the [b]uilding, which leads to the
> same spalling, deterioration, and falling off of bricks; insufficient or missing drip edges,
> which also allows water to remain within the façade and cause the same aforementioned

damage to the bricks; and the [b]uilding lacks end-dams, which also contributes to water penetration behind the facade."

¶ 9        Plaintiff alleged that in December 2016, it discovered that the building had other construction defects, including:

"metal coping on the top of the parapet of the roof lacks sufficient flashing to prevent water infiltration; stone capping on top of the masonry façade lacks sufficient flashing, which allows water penetration; improper and insufficient expansion joints are causing bricks to crack; cast stone window sills lack proper flashing, which allows water infiltration; balconies do not pitch away from the building, causing water to pool and make the balconies unusable after periods of rain; and window frames were improperly sealed, which allows water penetration."

Plaintiff alleged that the defects were caused by inferior workmanship during the construction and development of the building. It alleged that the defects adversely affected the habitability of the building because water penetrated through the façade into the units, which caused damage to the building, units, and personal property inside.

¶ 10        Plaintiff asserted a claim for breach of implied warranty of habitability against defendant, alleging that defendant had an obligation to construct the building for its intended purpose of habitation and, as evidenced by the defects, defendant failed to deliver the building to the Association for this purpose. Plaintiff also asserted a claim against defendant for breach of implied warranty of good workmanship, alleging that defendant had an obligation to construct the building in a reasonably workmanlike manner and, as evidenced by the defects, defendant failed to deliver the building to the Association in a reasonably workmanlike manner.

¶ 11        As previously discussed, defendant subsequently filed a motion to compel arbitration. *Library Tower Condominium Association, LLC*, 2019 IL App (1st) 181035-U, ¶ 19. The circuit court denied defendant's motion and we dismissed defendant's interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) because we did not have jurisdiction. *Id.* ¶ 36. On remand, defendant filed a section 2-619 motion to dismiss plaintiff's claims, arguing that the claims were barred because the Declaration and purchase agreement contained waivers of the implied warranty of habitability and all other implied warranties.

¶ 12        Defendant argued that the Declaration, by itself, was sufficient to dismiss plaintiff's claims based on the waiver of implied warranties. It cited section 14.06 of the Declaration, which states:

> "14.06 WAIVER OF IMPLIED WARRANTY OF HABITABILITY AND OTHER WARRANTIES: Illinois courts have held that every contract for the construction of a new home in Illinois carries with it a warranty that when completed, the home will be free of defects and will be fit for its intended use as a home. The courts have also held that this 'Implied Warranty of Habitability' does not have to be in writing to be a part of the contract and that it covers not only structural and mechanical defects such as may be found in the foundation, roof, masonry, heating, electrical and plumbing, but it also covers any defect in workmanship which may not easily be seen by the buyer. However, the courts have also held that a seller-builder and buyer may agree in writing that the Implied Warranty of Habitability is not included as a part of their particular contract. Each buyer of a Dwelling Unit from Declarant agreed in the purchase contract that the Declarant has excluded and disclaimed the Implied Warranty of Habitability and all other implied warranties, whether created judicially, statutorily or by common law, including

5

the implied warranty of fitness for a particular purpose. Such exclusion and disclaimer shall apply to and bind any subsequent Owner of a Dwelling Unit and, accordingly, no Owner of a Dwelling Unit shall be able to assert a claim against Declarant for a breach of the Implied Warranty of Habitability or any other implied warranty."

Defendant argued that the unit purchasers agreed to be bound by the Declaration because the purchase agreement listed the Declaration as a governing document.

¶ 13        Specifically, defendant cited paragraph 18 of the purchase agreement, which states:

"18.        Association Documents/Assessments: (a) Purchaser acknowledges that the Property is subject to the Association or Associations set forth on Addendum D and the documents governing same (the 'Association Documents'). Purchaser further acknowledges that the Association(s) may not be in existence at the time of entering into this Agreement. Seller reserves the right to make or correct any changes or amendments to the Association Documents as permitted by law. Purchaser acknowledges having received and agrees to be bound by the terms of the Association Documents."

Defendant argued that section two of Addendum D of the purchase agreement specifically identifies the Declaration as an Association Document. This section states as follows:

"2. Purchaser acknowledges that Purchaser shall be a member of the Library Tower Condominium Association ('Association') and shall be subject to the documents governing the Association (the 'Association Documents'). Purchaser acknowledges receipt of copies of the Association Documents***Purchaser has been advised to read the Association Documents and agrees to be bound by the terms of the Illinois Condominium Property Act (the 'Act') and the following Association Documents and any amendments thereto:

6

(a) The Declaration

***

Seller reserves the right to make any changes to the Association Documents which are permitted by law."

¶ 14    Defendant attached a purchase agreement to its motion to dismiss and stated that the exhibit was "a true and correct copy of an exemplar Purchase Agreement." Defendant also attached an affidavit signed by an employee of Lennar Chicago, the managing member of defendant. The affidavit stated that the purchase agreement attached to the motion was "a copy of an exemplar purchase agreement documenting purchase transactions associated with the Library Tower Property" and that the "exemplar attached is an exact duplicate of the original purchase agreement and was not prepared by Library Tower or Lennar Chicago in anticipation of this litigation."

¶ 15    In addition to arguing that the purchase agreement showed that the unit purchasers agreed to be bound by the Declaration, defendant argued that the purchase agreement confirmed that plaintiff's claims must be dismissed based on waivers of the implied warranties contained in the purchase agreement. Defendant cited paragraph 11 of the purchase agreement, which states:

"11. SELLER'S LIMITED WARRANTY/WAIVER OF IMPLIED WARRANTY OF HABITABILITY:

Except as otherwise provided in Addendum D:

(a) Limited Warranty. Purchaser understands and agrees that Seller is making only those express limited warranties set forth in the 2-10 HBW Booklet provided to Purchaser. Purchaser acknowledges having received and having been advised to read a sample copy of the 2-10 HBW Booklet and view the video 'Warranty Teamwork: You, Your Builder and HBW' and agrees to be bound by the terms of the 2-10 HBW program including any

7

and all binding arbitration provisions. THE 2-10 HBW CONSTITUTES THE SOLE AND EXCLUSIVE WARRANTY OF THE SELLER WITH RESPECT TO THE HOME AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND ALL WARRANTIES, GUARANTEES OR REPRESENTATIONS OF HABITABILITY AND/OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED BY THE SELLER AND EXCLUDED. In no event shall Seller be liable for any other damages, incidental, consequential, special or otherwise.

(b)      Waiver of Implied Warranty of Habitability. Illinois courts have held that every contract for the construction of a new residence in Illinois carries with it a warranty that, when completed, the residence will be free of defects and will be fit for its intended use as a residence. The courts have also held that this 'Implied Warranty of Habitability' does not have to be in writing to be a part of the contract and that it covers not only structural and mechanical defects such as may be found in the foundation, roof, masonry, heating, electrical and plumbing, but it also covers any defect in workmanship which may not easily be seen by the Purchaser. However, the courts have also held that a seller-builder and Purchaser may agree in writing, as here, that the Implied Warranty of Habitability is not included as part of their particular contract.      Seller's limited warranty as referred to above covers some, BUT NOT ALL, of the matters covered by the Implied Warranty of Habitability. Conversely, Seller's limited warranty may cover matters which are not covered by the Implied Warranty of Habitability. Thus, Seller's limited warranty may, and likely will, be different, in a number of respects, from the protection afforded a buyer by the Implied Warranty of Habitability. Purchaser agrees that in consideration for Seller providing Purchaser with the express limited warranties contained in the 2-10 HBW,

8

Purchaser will accept the 2-10 HBW as a substitute for the Implied Warranty of

Habitability."

¶ 16    Following this paragraph, the agreement contains a space for the purchaser(s) and the

"New Home Consultant" to provide their initials. Defendant then cited the next paragraph in

section 11, which states as follows:

"ACCORDINGLY, SELLER HEREBY DISCLAIMS AND PURCHASER

HEREBY WAIVES THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED

ABOVE. PURCHASER HEREBY ACKNOWLEDGES, UNDERSTANDS AND

AGREES THAT THE IMPLIED WARRANTY OF HABITABILITY IS NOT A PART

OF THIS AGREEMENT AND THAT IF A DISPUTE ARISES WITH SELLER AND

THE DISPUTE RESULTS IN A LAWSUIT, PURCHASER WILL NOT BE ABLE TO

RELY ON THE IMPLIED WARRANTY OF HABITABILTY DESCRIBED ABOVE

AS A BASIS FOR SUING THE SELLER OR AS THE BASIS OF A DEFENSE IF

SELLER SUES THE PURCHASER. PURCHASER MAY, HOWEVER, RELY ON

THE EXPRESS LIMITED WARRANTIES MADE BY SELLER TO PURCHASER.

ALL REPRESENTATIONS MADE HEREIN SHALL SURVIVE THE CLOSING AND

THE RECORDING OF THE DEED TO THE PROPERTY."

Following this paragraph the purchase agreement contains a line for the purchaser(s) to provide

their initials.

¶ 17    Defendant then argued that in paragraph 10 of Addendum D to the purchase

agreement, the unit purchasers agreed to an even more specifically worded waiver of implied

warranties. Defendant cited paragraph 10 of Addendum D, which states as follows:

"10. Paragraph 11 of the Agreement is hereby amended and restated, in its entirety, to be and read as follows:

11. SELLER'S LIMITED WARRANTIES/WAIVER OF IMPLIED WARRANTY OF HABITABILITY:

(a) Limited Warranties. Seller warrants (i) the Home against defects in material and workmanship for a period of one (1) year from the date of Closing or occupancy, whichever first occurs and (ii) the common elements of the building in which the Home is located against defects in material and workmanship for a period of one (1) year from the date on which the Common Elements are made part of the Condominium Property, all as more fully provided in Seller's standard limited warranty which shall be delivered to Purchaser at Closing. These 'Limited Warranties' shall be in lieu of all other warranties, express or implied. Seller's sole liability for a breach of these Limited Warranties shall be to provide necessary labor and materials to repair or replace the defect. Under no circumstances shall Seller be liable for consequential or incidental damages.

(b) Waiver of Implied Warranty of Habitability. Illinois courts have held that every contract for the construction of a new residence in Illinois carries with it a warranty that, when completed, the residence will be free of defects and will be fit for its intended use as a residence. The courts have also held that this 'Implied Warranty of Habitability' does not have to be in writing to be a part of the contract and that it covers not only structural and mechanical defects such as may be found in the foundation, roof, masonry, heating, electrical and plumbing, but it also covers any defect in workmanship which may not easily be seen by the Purchaser. However, the courts have also held that a seller-builder and Purchaser may agree in writing, as here, that the Implied Warranty of ***

Habitability is not included as part of their particular contract. Seller's Limited Warranties provided for above cover some, BUT NOT ALL, of the matters covered by the Implied Warranty of Habitability. Conversely, Seller's Limited Warranties may cover matters which are not covered by the Implied Warranty of Habitability. Thus, Seller's Limited Warranties may, and likely will, be different, in a number of respects, from the protection afforded a buyer by the Implied Warranty of Habitability. Purchaser agrees that in consideration for Seller providing Purchaser with Limited Warranties, Purchaser will accept the Limited Warranties as a substitute for the Implied Warranty of Habitability. ACCORDINGLY, SELLER HEREBY DISCLAIMS AND PURCHASER HEREBY WAIVES THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED ABOVE. PURCHASER HEREBY ACKNOWLEDGES, UNDERSTANDS AND AGREES THAT THE IMPLIED WARRANTY OF HABITABILITY IS NOT A PART OF THIS AGREEMENT AND THAT IF A DISPUTE ARISES WITH SELLER AND THE DISPUTE RESULTS IN A LAWSUIT, PURCHASER WILL NOT BE ABLE TO RELY ON THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED ABOVE AS A BASIS FOR SUING THE SELLER OR AS THE BASIS OF A DEFENSE IF SELLER SUES THE PURCHASER. PURCHASER MAY, HOWEVER, RELY ON THE LIMITED WARRANTIES MADE BY SELLER TO PURCHASER. ALL REPRESENTATIONS MADE HEREIN SHALL SURVIVE THE CLOSING AND THE RECORDING OF THE DEED TO THE PROPERTY."

Following this paragraph, the agreement contains a line for the purchaser(s) to provide their initials.

11

¶ 18        Defendant argued that based on the waivers of implied warranties contained in the Declaration and purchase agreement, plaintiff's claims should be dismissed. Defendant also contended that plaintiff's claims should be dismissed based on the statute of limitations. It argued that plaintiff failed to timely file its claims within the four-year statute of limitations because it discovered the alleged act or omission on October 10, 2010, but did not file its complaint until seven years later in 2017.

¶ 19        In response, plaintiff argued, *inter alia*, that the disclaimer contained in the purchase agreement was ineffective, that defendant failed to provide evidence that every purchaser executed the same purchase agreement, and that the purchasers received no consideration for the disclaimer contained in the addendum to the purchase agreement that applied to the common elements. Plaintiff further argued that the disclaimer in the purchase agreement was unenforceable because it was not conspicuous, did not explain the consequences of its inclusion, and was not agreed upon by the unit purchasers. Plaintiff argued that the disclaimer contained in the Declaration was also ineffective, that the unit owners did not receive consideration for the purported disclaimer, and that it did not meet the requirements necessary to disclaim the implied warranties.

¶ 20        In reply, defendant argued, *inter alia*, that the Declaration made "crystal clear" that there were no implied warranties and that the unit purchasers were legally bound to have received notice of the recorded Declaration and were deemed to have taken their real estate subject to its covenants. Defendant argued that the Declaration and purchase agreement were clear that there were no implied warranties involved in any sale. Defendant asserted that the waivers in these documents were "prominent and clear."

¶ 21     The circuit court granted defendant's motion to dismiss plaintiff's claims with prejudice. In the court's written order, it stated as follows:

> "Here, [defendant] has provided two documents containing express waivers of the implied warranty of habitability, one in the Association's Declaration, and confirmed again in the Purchase Agreements executed by the unit owners. The court finds that upon review of the documents, both waivers are both prominent and clear. The Declaration calls the waiver out by name in its Table of Contents, and again in the actual paragraph itself. Paragraph 11 of the Purchase Agreement is entitled, 'Seller's Limited Warranty/Waiver of Implied Warranty of Habitability,' in all capital letters, bold, and underlined. Section (b) of Paragraph 11 is then separately entitled 'Waiver of Implied Warranty of Habitability,' underlined, with three separate paragraphs below explaining that the purchaser is waiving the implied warranty of habitability. The court finds that these provisions constitute 'conspicuous' provisions 'which fully disclose[] the consequences' of their inclusions. Most importantly, the Purchasers' initials immediately below the all capital letter paragraphs show that the waivers were '*in fact* the agreement reached.' " (Emphasis in original.)

The court further concluded that plaintiff's argument that defendant improperly disclaimed the warranties failed and that "[n]otice of the implied waivers were sufficiently provided through both the Declaration and the Purchase Agreements."

¶ 22     The circuit court subsequently granted plaintiff's motion for an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding, as defendant's third-party complaints against third-party defendants remained pending. This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24    On appeal, plaintiff contends that the circuit court erred when it granted defendant's motion to dismiss based on disclaimers of the implied warranties contained in the purchase agreement and Declaration. Plaintiff argues that the disclaimer in the purchase agreement is unenforceable because the Association's members did not receive consideration in exchange for waiving the implied warranties. Plaintiff asserts that defendant failed to establish that each unit purchaser actually received and agreed to the purchase agreement and disclaimer contained therein. Plaintiff contends that the disclaimers in the purchase agreement and Declaration lacked the required conspicuousness and did not disclose the consequences of its inclusion. Plaintiff argues that the Declaration does not contain a disclaimer, as it simply references the purchase agreement disclaimer, and that the purchasers received no consideration in exchange for the disclaimer.

¶ 25    As previously discussed, the circuit court granted defendant's section 2-619 motion to dismiss based on the waivers of implied warranties contained in the purchase agreement and Declaration. Under a section 2-619 motion to dismiss, a defendant "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleading that defeat the claim." *Board of Managers of Park Point at Wheeling Condominium Association v. Park Point at Wheeling, LLC*, 2015 IL App (1st) 123452, ¶ 33. Specifically, under section 2-619(a)(9), dismissal of a complaint is proper where the claim "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). When we review a circuit court's order granting dismissal based on section 2-619, we must accept as true all well-pled facts contained in the complaint and in any uncontradicted affidavits attached to the motion to dismiss. *1324 W. Pratt Condominium Association v. Platt Construction Group.,*

*Inc.*, 2012 IL App (1st) 111474, ¶ 21. We review *de novo* the circuit court's order dismissing claims based on section 2-619. *Id.*

¶ 26    "The implied warranty of habitability is a 'creature of public policy' that was designed 'to protect purchasers of new houses upon discovery of latent defects in their homes.' " *Id.* ¶ 23 (quoting *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183 (1982)). However, buyers may waive the protection of the implied warranty of habitability. *Board of Managers of Park Point at Wheeling Condominium Association*, 2015 IL App (1st) 123452, ¶ 34. "A waiver is an intentional relinquishment of a known right and cannot occur through mistake or misapprehension of fact." *Id.* ¶ 35. A disclaimer of the implied warranty of habitability will be strictly construed against the builder-vendor. *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 43 (1979). A disclaimer of the warranty of habitability is valid if it is "a conspicuous part of the contract, refers to the warranty by name, and uses plain language that fully discloses the consequences of its inclusion." *Board of Managers of Park Point at Wheeling Condominium Association*, 2015 IL App (1st) 123452, ¶ 41. "A seller is not required to specifically point out a disclaimer in a written contract." *Id.* Further, the "court may find that the language of a contract is so clear and so conspicuous that no other reasonable conclusion could be reached but that the buyer both read and understood the language and therefore as a matter of law effectively waived the implied warranty." *Id.* ¶ 36.

¶ 27    Here, we conclude that the disclaimer of the implied warranties in the purchase agreement was clear and conspicuous such that the unit purchasers waived the implied warranties. Paragraph 11 of the purchase agreement specifically refers to the implied warranty of habitability by name. In bold and underlined capital letters, it states "<u>SELLER'S LIMITED WARRANTY/WAIVER OF IMPLIED WARRANTY OF HABITABILITY</u>." Under this

header, there are three separate paragraphs relating to the waiver as it relates to the "Home," which the agreement defines as the "residence." Under the second paragraph, the words "Waiver of Implied Warranty of Habitability" are underlined, and the paragraph explains the implied warranty of habitability in Illinois, including that every contract for the construction of a new residence carries with it an implied warranty of habitability that the residence will be free of defects and will be fit for its intended use as a residence and that a seller-builder and purchaser may agree in writing that the warranty is not included as part of their particular contract. In the third paragraph, it states in capital letters that the purchaser is waiving the implied warranty of habitability and then explains the consequences of the waiver, *i.e.,* if a dispute arises with the seller and results in a lawsuit, the purchaser will not be able to rely on the implied warranty of habitability. Immediately below this paragraph, the agreement contains space for the purchaser(s) to provide his or her initials.

¶ 28       Then, in Addendum D of the purchase agreement, paragraph 10 amends section 11 and addresses the seller's limited warranty and the purchaser's waiver of all implied and express warranties as they relate to both the home and the common elements. The section states as follows:

> "10. Paragraph 11 of the Agreement is hereby amended and restated, in its entirety, to
> be and read as follows:
>
> 11. SELLER'S LIMITED WARRANTIES/WAIVER OF IMPLIED WARRANTY OF
> HABITABILITY:
>
> (a) Limited Warranties. Seller warrants (i) the Home against defects in material and
> workmanship for a period of one (1) year from the date of Closing or occupancy,
> whichever first occurs and (ii) the common elements of the building in which the Home

16

is located against defects in material and workmanship for a period of one (1) year from the date on which the Common Elements are made part of the Condominium Property, all as more fully provided in Seller's standard limited warranty which shall be delivered to Purchaser at Closing. These 'Limited Warranties' shall be in lieu of all other warranties, express or implied.***" (Emphasis added.)

Thus, the agreement expressly provides that the seller's limited warranties were "in lieu" of all other warranties. Then, following the paragraph regarding all warranties, section (b) specifically addresses the implied warranty of habitability, refers to it by the full name, *i.e.,* "Waiver of Implied Warranty of Habitability," and explains the warranty, including that it is contained in every contract in Illinois and that the seller and purchaser "may agree in writing, as here," that the warranty is not included as a part of the contract.

¶ 29    In the next part of section (b) in paragraph 10 regarding the "Waiver of Implied Warranty of Habitability," the agreement specifically states that the purchaser agrees to disclaim the implied warranty of habitability in exchange for the seller's limited warranty, expressly disclaims the implied warranty of habitability, and then explains the consequences of doing so as follows:

"Purchaser agrees that in consideration for Seller providing Purchaser with Limited Warranties, Purchaser will accept the Limited Warranties as a substitute for the Implied Warranty of Habitability. ACCORDINGLY, SELLER HEREBY DISCLAIMS AND PURCHASER HEREBY WAIVES THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED ABOVE. PURCHASER HEREBY ACKNOWLEDGES, UNDERSTANDS AND AGREES THAT THE IMPLIED WARRANTY OF HABITABILITY IS NOT A PART OF THIS AGREEMENT AND THAT IF A

17

DISPUTE ARISES WITH SELLER AND THE DISPUTE RESULTS IN A LAWSUIT, PURCHASER WILL NOT BE ABLE TO RELY ON THE IMPLIED WARRANTY OF HABITABILITY DESCRIBED ABOVE AS A BASIS FOR SUING THE SELLER OR AS THE BASIS OF A DEFENSE IF SELLER SUES THE PURCHASER. PURCHASER MAY, HOWEVER, RELY ON THE LIMITED WARRANTIES MADE BY SELLER TO PURCHASER. ALL REPRESENTATIONS MADE HEREIN SHALL SURVIVE THE CLOSING AND THE RECORDING OF THE DEED TO THE PROPERTY."

Accordingly, the agreement conspicuously states in all capital letters that the purchaser waived the implied warranty of habitability and then explains the consequences, including that the purchaser cannot rely on the warranty as a basis for suing the seller. The agreement brings the all-capitalized font disclaimer to the purchaser's attention because immediately below the all-capitalized font it contains a line for the purchaser(s) to provide their initials.

¶ 30       From our review of the entire purchase agreement, we conclude that the disclaimer of implied warranty of habitability was conspicuous, referred to the warranty of habitability by name, fully disclosed the consequences of its inclusion in the agreement, and was a part of the parties' agreement. See *Board of Managers of Park Point at Wheeling Condominium Association*, 2015 IL App (1st) 123452, ¶ 41 ("In Illinois, a disclaimer of the warranty of habitability is effective if it is a conspicuous part of the contract, refers to the warranty by name, and uses plain language that fully discloses the consequences of its inclusion."). Thus, the disclaimer of the implied warranty of habitability in the purchase agreement was an effective disclaimer.

18

¶ 31    Furthermore, the Declaration confirmed the disclaimer of implied warranty of habitability and all other warranty provisions contained in the purchase agreement. The purchase agreement specifically states that the unit purchaser agreed to be bound by the Association Documents, which included the Declaration. In section 14.06 of the Declaration, it specifically refers to the warranty of implied habitability by name in all capital and underlined letters. The paragraph under this header explains the warranty and expressly states that the purchaser agreed to the disclaimer of the implied warranties in the purchase agreement, as it states: "Each buyer of a Dwelling Unit from Declarant agreed in the purchase contract that the Declarant has excluded and disclaimed the Implied Warranty of Habitability and all other implied warranties, whether created judicially, statutorily or by common law, including the implied warranty of fitness for a particular purpose." The paragraph also explains the consequences of the disclaimer, including that no owner "shall be able to assert a claim against Declarant for a breach of the Implied Warranty of Habitability or any other implied warranty."

¶ 32    Plaintiff asserts that the disclaimer of the implied warranties in the purchase agreement is invalid because the Association's members did not receive consideration in exchange for waiving the implied warranties. Plaintiff argues that the one-year limited warranty period associated with the common elements as consideration for disclaiming the implied warranties began when defendant made the common elements part of the condominium property and then expired before defendant turned control over to a unit-elected Board of Directors such that defendant had exclusive control over when the limited warranty period expired, and plaintiff never had an opportunity to assert a claim based on the limited warranty through its Board of Directors. Plaintiff therefore argues that it did not receive anything in exchange for the disclaimer of implied warranties. However, there is nothing in the record to show that plaintiff

19

did not receive the one-year limited warranty in exchange for disclaiming the implied warranties. Further, plaintiff did not discover the alleged defects until 2015, and there is nothing to show that, had plaintiff discovered the alleged defects within the one-year limited warranty period of January 8, 2009 to January 8, 2010, the limited warranty would not have been effective or that defendant would have breached the contract by not adhering to the limited warranty. Plaintiff also does not provide any authority to support that a provision in a contract whereby a seller-developer provides a limited warranty in exchange for the purchaser waiving the implied warranties is unenforceable due to lack of consideration because the turnover of the Association from the seller to the unit-elected board of directors did not occur until after the limited warranty period had expired.

¶ 33        Plaintiff asserts that the unit purchasers were "duped into waiving" the implied warranties "in exchange for a limited warranty that could never be exercised," which demonstrates that the provision was unconscionable and a circumstance of "gross inadequacy and unfairness" such that the court should not enforce the contract.

¶ 34        " 'It is not [the] court's function to review the amount of consideration unless the amount is so grossly inadequate as to shock the conscience.' " *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 48 (quoting *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 93 (1999)). Factors relevant to finding a contract unconscionable include the age, education, and commercial experience of the parties, whether the aggrieved party had a meaningful choice when faced with unreasonably unfavorable terms, the gross disparity in the values exchanged, and the gross inequality in the bargaining positions of the parties together with terms unreasonably favorable to the stronger party. *Ahern v. Knecht*, 202 Ill. App. 3d 709, 716, (1990). However, "[m]ere inadequacy of consideration, in the absence of fraud or

20

unconscionable advantage, ordinarily is insufficient to justify setting aside a contract." *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484, 490-91 (1996).

¶ 35    Applying these principles, plaintiff does not allege that defendant engaged in fraud nor does it direct us to anything in the record to support the existence of any factors described above that are relevant to finding that the contract was unconscionable. We therefore cannot find that the consideration in the purchase agreement was so grossly inadequate as to shock the conscience.

¶ 36    Plaintiff asserts that the disclaimer of the warranties in the purchase agreement is invalid because defendant failed to prove that every unit purchaser agreed to and signed the agreement. Defendant attached to its motion to dismiss a purchase agreement and an affidavit signed by an employee of Lennar Chicago, the managing member of defendant. The affidavit stated that the purchase agreement attached to the motion was "a copy of an exemplar purchase agreement documenting purchase transactions associated with the Library Tower Property" and that the "exemplar attached is an exact duplicate of the original purchase agreement and was not prepared by Library Tower or Lennar Chicago in anticipation of this litigation." Plaintiff did not file a counter-affidavit with any contrary facts, *i.e.,* that not every unit purchaser signed the same copy of the exemplar purchase agreement attached to defendant's motion. Because defendant's affidavit was not refuted by a counter-affidavit, the facts in defendant's affidavit are deemed admitted. See *Board of Managers of Park Point at Wheeling Condominium Association*, 2015 IL App (1st) 123452, ¶ 45 ("When a supporting affidavit has not been refuted by a counter-affidavit or other appropriate means, the facts in that supporting affidavit are deemed admitted."). We are therefore unpersuaded by plaintiff's argument that the disclaimer in the purchase agreement

attached to defendant's motion to dismiss is invalid because not every purchaser signed the purchase agreement containing the disclaimer.

¶ 37    Further, we note that plaintiff attached the Declaration to its complaint. As previously discussed, the section regarding the disclaimer of the implied warranty of habitability and other implied warranties in the Declaration confirms the disclaimer contained in the purchase agreement, as the Declaration states in section 14.06: "Each buyer of a Dwelling Unit from Declarant agreed in the purchase contract that the Declarant has excluded and disclaimed the Implied Warranty of Habitability and all other implied warranties, whether created judicially, statutorily or by common law, including the implied warranty of fitness for a particular purpose."

¶ 38    Lastly, we note that defendant argues that plaintiff's claims are barred by the statute of limitations. However, the circuit court found that there were questions of fact as to when the cause of action for plaintiff's claims accrued. Given our disposition, we need not address this issue.

¶ 39                                III. CONCLUSION

¶ 40    Based on the foregoing, the circuit court properly granted defendant's motion to dismiss because the purchase agreement contained effective disclaimers of the implied warranties.

¶ 41    Affirmed.